UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 8:18-cr-80-T-02JSS

RASHID TURNER
a/k/a "Dirty Red"

### UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS CELL SITE DATA

The United States hereby opposes *Defendant's Motion to Suppress Evidence Obtained Under the Stored Communications Act in Violation of the Fourth Amendment* ("Def.'s Mot."). Doc. 164. In his motion, the defendant relies on *Carpenter v. United States*, 138 S. Ct. 2206 (2018), and seeks to suppress cell site location information that the government obtained under the Stored Communications Act ("SCA"), 18 U.S.C. § 2703, rather than a search warrant supported by probable cause. For the reasons set forth below, the defendant's motion should be denied because the good-faith exception to the exclusionary rule applies. *See United States v. Leon*, 468 U.S. 897 (1984). The government obtained the cell site location information pursuant to a then-valid § 2703(d) court order months before *Carpenter* was decided. Moreover, the Eleventh Circuit has already considered the defendant's arguments and rejected them. *See United States v. Joyner*, 899 F.3d 1199 (11th Cir. 2018).

In support, the United States submits the following Memorandum of Law.

## I.   PROCEDURAL HISTORY

On January 31, 2019, a federal grand jury charged the defendant in an 11-count, three defendant, indictment. Second Superseding Indictment, Doc. 100. Count One of the Second Superseding Indictment charges the defendant with conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951(a). *Id.* Counts Two, Four, Six, and Nine charge the defendant with Hobbs Act robbery, in violation of 18 U.S.C. §§ 1951(a) and 2. Counts Seven and Ten charge the defendant with bank robbery, in violation of 18 U.S.C. §§ 2113(a) and 2. Counts Three, Five, Eight, and Eleven charge the defendant with brandishing a firearm during and in relation to a crime of violence (the robberies charged in Counts Two, Four, Six/Seven, and Nine/Ten, respectively), in violation of 18 U.S.C. § 924(c) and 2.

## II.   RELEVANT FACTUAL BACKGROUND

The United States, through the Federal Bureau of Investigation, conducted an investigation into the defendant and his coconspirators in connection with five armed robberies committed between August 27, 2017 and December 28, 2017, in

violation of 18 U.S.C. §§ 1951(a), 2113(a), and § 924(c).[1] In the course of that investigation, the government seized two cell phones associated with the defendant. The first of these cell phones was seized on November 18, 2017 in the course of the arrest of the defendant's co-conspirator, Petrie ADDISON, who had temporary possession of the defendant's LG cell phone. Law enforcement officers searched this LG cell phone pursuant to a state court-authorized warrant on January 10, 2018. Analysis of these phones' content showed that the LG cell phone associated with telephone number (239) 284-6078 belonged to the defendant and had been used by him throughout the time period of the first three substantive robberies charged in the Second Superseding Indictment, August 27, 2017 through November 18, 2017.

On January 15, 2018, law enforcement officers arrested the defendant. Pursuant to a federal search warrant, agents searched the defendant's car and seized a second LG cell phone, which investigation revealed was also associated with telephone number (239) 284-6078. Agents then searched the second LG cell phone pursuant to a separate federal search warrant and determined that the phone belonged to the defendant and had been used by him throughout the time

---

[1] At trial, the United States anticipates that the evidence will show that the defendant was the leader/organizer of the robbery crew, recruited the other participants, and served as an armed gunman in each of the robberies.

3

period of the fourth and fifth robberies, December 4, 2018 through December 28, 2018, as well as afterward.

In sum, the evidence showed that the defendant used telephone number (239) 284-6078 on a continuous basis from the first armed robbery through the date of his arrest, approximately two weeks after the fifth armed robbery.

On January 24, 2018, Arcadia Police Department Lieutenant Gary Evans sought and obtained a state court-authorized warrant, pursuant to Fla. Stat. §§ 812.13(2)(a), 934.23, 934.32, 934.33, 934.42, directing Cellco Partnership, doing business as Verizon Wireless ("Verizon"), to disclose to the government a variety of records related to telephone number (239) 284-6078, including historical cell site location information for November 18, 2017 through January 24, 2018 and prospective cell site location information from January 24, 2018 through March 10, 2018. *See* Attachment A. The state court's order explicitly stated that the government had provided <u>probable cause</u> to support the issuance of the warrant. *Id.* at 2 (". . . AND this Court, having found the sworn Application in this matter to have sufficiently articulated **Probable Cause** for the issuance of this Warrant . . .") (emphasis in original).

On March 9, 2018, the undersigned sought and obtained a court order, pursuant to 18 U.S.C. § 2703(d), directing Verizon to provide historical cell site location for telephone number (239) 284-6078 for the following time periods:

4

August 25-30, 2017; October 26-31, 2017; and November 16-18, 2017. Upon reviewing the United States' application, which included specific and articulable facts showing that there were reasonable grounds to believe that the records and other information sought were relevant to an ongoing criminal investigation as required by § 2703(d), United States Magistrate Judge Anthony E. Porcelli granted the United States' request and issued a court order to Verizon. *See* Attachment B.

Pursuant to these court orders, Verizon disclosed cell site location data to the government for both of the cell phones associated with the defendant for the time periods described above. Although the defendant resides in the Lehigh Acres, Florida area, the cell site location data showed his cell phone pinging towers near each of the five armed robbery locations during the timeframe when each of the armed robberies was committed. Each of the armed robberies occurred a significant distance from the defendant's home.[2]

Months later, on June 22, 2018, the Supreme Court decided *Carpenter*.

### III.   <u>MEMORANDUM OF LAW</u>

### A.   **The Defendant's Motion Should be Denied as Untimely**

---

[2] The first two armed robberies occurred in Ft. Myers, Florida, approximately thirty minutes away from the defendant's home. The third armed robbery occurred in Spring Hill, Florida, approximately three hours away from the defendant's home. The fourth armed robbery occurred in Arcadia, Florida, approximately two hours away from the defendant's home. The fifth armed robbery occurred in Port St. Lucie, Florida, approximately two hours away from the defendant's home.

The Defendant had his initial appearance and arraignment in this case on August 15, 2018. That same day, Magistrate Judge Julie S. Sneed issued a "Criminal Scheduling Order" that, among other things, declared "[w]ithin **twenty-one (21)** days from the date of this Order, the parties shall file and serve all motions (with memoranda and certificate) and all notices. *See* Fed. R. Crim. P. 12(c); Local Rule 3.01(a)." Doc. 52 (emphasis in original).

Rule 12(b)(3) of the Federal Rules of Criminal Procedure ("Motions that Must Be Made Before Trial") covers suppression motions and the deadlines attached to them. *Id.* Rule 12(c)(3) ("Consequences of Not Making a Timely Motion Under Rule 12(b)(3)") states that "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause." *Id.* The defendant has not made a showing of good cause or even addressed the issue of his untimeliness. Consequently, the Court should deny the defendant's motion as untimely

### B. Cell Site Data for November 18, 2017 through March 10, 2018 Was Obtained Via a Search Warrant, so *Carpenter* Is Inapplicable

At best, the defendant's motion to suppress is overbroad. The defendant seeks to suppress <u>all</u> of the cell site location data connected to the defendant's cell phone obtained by the government. The defendant's mistake is that he fails to distinguish between the cell site location data the government obtained via a state

6

court <u>search warrant</u>, covering November 18, 2017 through March 10, 2018, and the data obtained via a federal <u>court order</u> issued pursuant to 18 U.S.C. § 2703(d) for August 25-30, 2017; October 26-31, 2017; and November 16-18, 2017.

The state court-authorized search warrant was based on probable cause. *See* Attachment A at 2. As such, the Supreme Court's *Carpenter* decision is inapplicable; the state court warrant adheres to *Carpenter's* requirements. Accordingly, the Court should summarily deny the defendant's motion with respect to the government's acquisition and use of cell site location information for November 18, 2017 through March 10, 2018.

**C.     The Good-Faith Exception to the Exclusionary Rule Applies to the Remaining Data Because the Government Reasonably Relied on the Stored Communications Act to Obtain It**

The government obtained cell site location information for August 25-30, 2017; October 26-31, 2017; and November 16-18, 2017 via a § 2703(d) order issued by Judge Porcelli. *See* Attachment B. The United States does not dispute that post-*Carpenter*, the government is required to obtain a search warrant to acquire seven or more days of historical cell site location information. *See Carpenter*, 138 S.Ct. 2206. Suppressing the evidence obtained in this case, however, is not an appropriate remedy for a violation of the Fourth Amendment because the United States reasonably relied in good faith on the following: the

SCA, 18 U.S.C. § 2703; the court order entered in accordance with that Act; and then-binding precedent upholding the validity of such orders.

The Fourth Amendment protects the right to be free from "unreasonable searches and seizures;" however, it is silent on how to enforce this right. *Davis v. United States*, 564 U.S. 229, 231 (2011). Accordingly, the Supreme Court created the exclusionary rule, a "prudential doctrine . . . to compel respect for the constitutional guaranty." *Id.* at 236 (internal quotation marks omitted). The rule, however, is neither a personal right nor a right to "redress the injury occasioned by an unconstitutional search." *Id.* (internal quotation marks omitted). Rather, its purpose is to deter *future* Fourth Amendment violations, and its application is limited "to situations in which this purpose is thought most efficaciously served." *Id.* at 237 (emphasis added).

Real deterrent value therefore "is a necessary condition for exclusion, but it is not a sufficient one." *Davis*, 564 U.S. at 237 (internal quotation marks omitted). Any suppression analysis must also account for the exclusionary rule's "substantial social costs," which include "ignor[ing] reliable, trustworthy evidence bearing on guilt or innocence" and possibly setting a "criminal loose in the community without punishment." *Id.* "[S]ociety must swallow this bitter pill when necessary, but only as a last resort." *Id.* (internal quotation marks omitted).

8

Thus, "[f]or exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Id*.

The deterrence benefits of suppression depend on the culpability of the officers. *Id*. When officers show deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights, the deterrence benefits are strong and usually outweigh the social costs. *Davis*, 564 U.S. at 237. "Indeed, the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional." *Herring v. United States*, 555 U.S. 135, 143 (2009) (giving as examples officers breaking into homes without warrants or information that would justify warrants). However, the Supreme Court has never applied the rule to exclude evidence "where police conduct was no more intentional or culpable" than that. *Id*. An error that "arises from nonrecurring and attenuated negligence is thus far removed from the core concerns" that led to the rule in the first instance. *Id*. When officers have an "objectively reasonable good faith belief that their conduct is lawful" or their conduct involves isolated negligence, "the deterrence rationale loses much of its force and exclusion cannot pay its way." *Davis*, 564 U.S. at 237-238 (internal quotation marks omitted); *see also Illinois v. Krull*, 480 U.S. 340 (1987).

The Supreme Court most recently addressed the exclusionary rule and applied the requisite balancing in *Davis*. In *Davis*, the Court held that "searches

conducted in objectively reasonable reliance on binding judicial precedent are not subject to the exclusionary rule." *Davis*, 564 U.S. at 231. *Davis* is in accord with the Court's earlier exclusionary rule decisions while again stressing the limited circumstances under which a court should apply the rule. For example, in *Krull*, the Supreme Court held that reliance on a federal statute gives rise to a presumption of good faith unless the statute is "clearly unconstitutional." 480 U.S. at 349-50 (exclusionary rule does not apply even if the statute is later declared unconstitutional). Similarly, in *United States v. Leon*, 468 U.S. 897, 922 (1984), the Supreme Court held that the exclusionary rule does not apply when police act in objectively reasonable reliance on a warrant, even if that warrant is later deemed invalid for lack of probable cause.

Here, the United States acted in good-faith reliance on *U.S. v. Davis*, 785 F.3d 498 (11th Cir. 2015) (*en banc*), which held that a warrant was not required for cell site records obtained under the SCA. Although that holding was later overruled by *Carpenter*, it was binding precedent at the time Judge Porcelli issued the § 2703(d) order in this case. *See* Attachment B. Therefore, the United States acted in good faith and suppression is unwarranted. *See Davis*, 564 U.S. at 238-39. Indeed, in *Davis*, 785 F.3d at 518 n.20, the Eleventh Circuit held, alternatively, "that the prosecutors and officers here acted in good faith and therefore, under

the well-established *Leon* exception, the district court's denial of the motion to suppress did not constitute reversible error."

Moreover, the Eleventh Circuit has already addressed the exact arguments made by the defendant here and rejected them. *Joyner*, 899 F.3d 1199 ("the Government complied with the requirements of the SCA in obtaining the orders to compel cell site records" while it was still lawful). The Second, Third, Fourth, and Ninth circuits have similarly held that the good-faith exception applies when the government used a court order pursuant to 18 U.S.C. § 2703(d) to obtain cell site records before *Carpenter* was decided. *United States v. Korte*, 918 F.3d 750, 759 (9th Cir. Mar. 15, 2019); *United States v. Goldstein*, 914 F.3d 200, 205 (3rd Cir. Jan. 22, 2019); *United States v. Chambers*, 751 Fed. App'x 44, 47 (2nd Cir. Sept. 21, 2018); *United States v. Chavez,* 2018 WL 3215914, *9 894 F.3d 593 (4th Cir. July 2, 2018) (stating "[The defendant] does not, and cannot, deny that investigators in this case reasonably relied on court orders and the Stored Communications Act in obtaining the cell site records. Without question, then the good-faith exception to the exclusionary rule applies to the investigators' actions here."). Indeed, the Circuit courts that have confronted the issue raised by the defendant have unanimously ruled that pre-*Carpenter* compliance with the SCA establishes good faith.

11

The defendant attempts to distinguish this case from *Joyner* by noting that unlike the timing of the challenged order in *Joyner*, here *Carpenter* had been argued – but not decided – at the time the government submitted its request for a §2703(d) order to Judge Porcelli. The defendant argues that "[i]t is reasonable to believe that law enforcement officials in general were well aware of *Carpenter* during the time that it was pending before the Supreme Court," and therefore "[a]pplying *Carpenter* to the present case will not be in conflict with *Leon*." Def.'s Mot. at 8. The suggestion is that because "law enforcement officials in general" were likely aware that the law <u>might</u> change when *Carpenter* was decided, the agents in this case were not acting in good faith reliance on the legality of the SCA and Judge Porcelli's order. This argument runs afoul of basic principles. Law enforcement officers are tasked with acting in accordance with and enforcing the law as it is, not as it might become in the future.

More importantly, the defendant's argument is counter to the Eleventh Circuit's express holding in *Joyner* that *Carpenter* "does not affect the applicability of the *Leon* good faith exception" and that pre-*Carpenter* reliance on the SCA is "within the bounds of the Fourth Amendment." 899 F.3d 1199, 1205. For support, the Eleventh Circuit cites the Fourth Circuit's holding in *Chavez*: "'[w]hile *Carpenter* is obviously controlling going forward, it can have no effect on" cases where law enforcement acted in '[o]bjectively reasonable good faith,'

12

which 'includes searches conducted in reasonable reliance on subsequently invalidated statutes,'" such as the SCA. *Id.* (quoting *Chavez*, 894 F.3d at 608) (internal quotations omitted).

An evidentiary hearing is unnecessary here. The issue raised is purely a legal one. It is clear from binding precedent that in seeking and obtaining a court order for cell site location information, pursuant to 18 U.S.C. § 2703(d), the United States did not act with any deliberate, reckless, or grossly negligent disregard for the defendant's Fourth Amendment rights required for application of the rule. *Joyner*, 899 F.3d 1199. To the contrary, the United States acted in good-faith in reasonably relying on the SCA when it sought a court order pursuant to 18 U.S.C. § 2703(d), and acted in good faith reliance on Judge Porcelli's order when it received and analyzed the data provided by Verizon. *Id.*

## IV.   <u>CONCLUSION</u>

In *Carpenter*, the Supreme Court recently invalidated the government's reliance on court orders pursuant to § 2703(d) to obtain most historical cell site information and held that the government must instead seek a search warrant to obtain this data. Prior to *Carpenter* being decided, federal agents sought and Magistrate Judge Anthony E. Porcelli issued a § 2703(d) order directing Verizon to disclose historical cell site location information for a phone number associated with the defendant. *See* Attachment A. The United States reasonably relied in

13

good faith on the SCA and Judge Porcelli's order; therefore, suppressing the evidence obtained in this case pursuant to Judge Porcelli's order is unwarranted.

Similarly, the Court should not suppress the separate data set of cell site location information obtained by the government pursuant to a state court-authorized search warrant. *See* Attachment B.

WHEREFORE the United States respectfully requests this Court enter an order denying *Defendant's Motion to Suppress Evidence Obtained Under the Stored Communications Act in Violation of the Fourth Amendment* in its entirety. Doc. 164.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By: *s/ Michael M. Gordon*
Michael M. Gordon
Assistant United States Attorney
AUSA No. 182
400 N. Tampa Street, Suite 3200
Tampa, Florida 33602-4798
Telephone:   (813) 274-6000
Facsimile:     (813) 274-6103
E-mail: michael.gordon3@usdoj.gov

**U.S. v. Rashid Turner**                    **CASE NO. 8:18-cr-80-T-02JSS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system, which will send a

notice of electronic filing to the following:

Michael Maddux, Esquire

By: <u>*s/ Michael M. Gordon*</u>
   Michael M. Gordon
   Assistant United States Attorney
   AUSA No. 182
   400 N. Tampa Street, Suite 3200
   Tampa, Florida 33602-4798
   Telephone:   (813) 274-6000
   Facsimile:    (813) 274-6103
   E-mail: michael.gordon3@usdoj.gov