UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

v.  Case No. 8:18-cr-80-T-02JSS

RASHID TURNER,

    Defendant.
_____/

## ORDER

This matter comes to the Court on Defendant Turner's Motion to Suppress Evidence. Dkt. 165. The United States responded in opposition. Dkt. 175. The Court held an evidentiary hearing and, in accord with its oral ruling on May 20, 2019, DENIES the motion.

## BACKGROUND

This case concerns an investigation into an alleged string of robberies of banks and dollar stores. During the investigation, the government seized two cellphones allegedly associated with Defendant. Dkt. 174 at 3. According to the government, the first belonged to Defendant during the three initial robberies, between August 27, 2017 and November 18, 2017, and the second during the fourth and fifth robberies between December 4, 2018 and December 28, 2018. Dkt. 174 at 3-4. Both phones used the same telephone number.

At an evidentiary hearing on the instant motion, the Court heard testimony from Detective Daniel Toner of the Pasco County Sheriff's Office (PCSO), Detective Thomas Breedlove of the Hernando County Sheriff's Office (HCSO), and Lieutenant William Power of the HCSO. Dkt. 199. According to that evidence and proffers by the government, on November 18, 2017 Petrie Addison and Defendant drove a Hyundai to rob a Wells Fargo bank. During the robbery, Addison left the car keys in the bank and had to reenter to retrieve the keys. Addison then fled in the Hyundai, and Defendant left in a separate vehicle.

A nearby individual watched Addison leave the bank and followed him by car. Evidence at trial showed that, as Addison drove away, Defendant called Addison from a different phone. Defendant told Addison that Addison was being followed. The individual who followed Addison reported his location to law enforcement which took over the pursuit. Addision's vehicle eventually crashed into another vehicle whereupon he fled on foot.

When Addison was subsequently apprehended, an Apple cellphone was found on his person. An LG phone was also found on the driver's floorboard of the Hyundai. Addison denied ownership of the LG phone. The car was impounded, and HSCO took the phone into evidence. Detective Breedlove, the lead detective from HSCO, obtained a warrant for the car and Apple cellphone on November 20, 2017 and executed the warrant the following day.

Breedlove also drafted a warrant for the LG phone on November 27, 2017. At the time, the office's warrant process typically required approval from a sergeant, lieutenant, and then captain before the warrant reached a judge.[1] On November 28, 2017, Detective Breedlove obtained approval with a few changes from then-Sergeant William Power. Breedlove next took the draft to his captain who approved it. Instead of obtaining the judge's signature, Detective Breedlove then placed the draft in the case file and moved on to different aspects of the case investigation.

Detective Toner later contacted Breedlove on January 2, 2018 to inquire about the LG phone. Detective Breedlove, thinking that in accord with his routine practice he had obtained a valid search warrant, gave the phone to Power for him to extract the phone's contents. Power, in turn, relied on Detective Breedlove's representations that a valid search warrant had been obtained. On January 3, 2018, Power performed an extraction, which required software to crack the phone's password.

On January 8, 2018, Breedlove gave the extracted information to Power. Around the same timeframe, Special Agent Loretta Bush of the Federal Bureau of Investigation received a disk with the extracted information. She did not look at the contents of the disk until the end of January or beginning of February.

---

[1] Detective Breedlove also testified that at HSCO the process for obtaining a warrant has since changed, though it is not clear in what ways.

Around January 10, 2018, Toner asked Breedlove for the search warrant for the LG phone. At this point, Breedlove realized he had neglected to obtain a judge's signature on the search warrant. Detective Breedlove immediately added an additional paragraph to the original version of the search warrant explaining what had happened.[2] Breedlove obtained a signature from a state judge on the warrant on January 10, 2018. The January 10, 2018 search warrant application did not contain any information extracted from the phone, and there is no evidence the phone's contents were viewed substantively until late January at the earliest. In authorizing the warrant, the judge questioned Detective Breedlove about the prior search. Once the search warrant was obtained, Lieutenant Power did not perform another extraction on the phone as he had already collected all the usable information.

While the LG phone was in police custody, no one contacted the station to inquire about the phone. The government further proffered that, according to phone records, Defendant's second, replacement cellphone was activated on November 19, 2017, the day after the Wells Fargo robbery. Evidence at trial suggested that, on the same day, Defendant called the person who had rented the Hyundai used in the robbery.

The Court has ruled on a separate motion to suppress the cell site location information for the phone number associated with the phones. Now before the Court is a

---

[2] That paragraph stated: "It should be noted that an extraction was performed on the LG cell phone on January 3, 2018. This extraction was completed with a misunderstanding that a warrant for the phone had already been reviewed and signed." Dkt. 205-4 at 8.

motion to suppress information obtained from the search of the LG phone. Suppression is inappropriate.

## DISCUSSION

The Court finds that Defendant abandoned the LG cell phone when he fled from the Wells Fargo robbery, thus relinquishing his reasonable expectation of privacy in its contents. Even if not, the government's delay in obtaining a search warrant was not unreasonable given the circumstances. Furthermore, the collection of any information retrieved from the phone was inevitable or derived from an independent source. Lastly, the search was supported by probable cause. The Court will address these points in turn.

I.   Abandonment of the LG Cell Phone

"A seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on 'unreasonable searches.'" *United States v. Sparks*, 806 F.3d 1323, 1338-39 (11th Cir. 2015) (citation omitted). As explained below, if "law enforcement unreasonably delays obtaining a warrant to search the item, a reasonable seizure can become unreasonable." *Id.* (citation omitted). This "reasonableness determination will reflect a careful balancing of governmental and private interests." *Id.* (citations omitted).

But a defendant can lose standing to contest a delay—or any Fourth Amendment violation—if he abandons his possessory interest in the item searched. *Id.* at 1340-42. In

*Sparks*, for example, the court held that a couple abandoned a cellphone when they had left it at a Walmart store, knew its location, and did not retrieve the phone. *Id.* at 1343-44. Courts have also found abandonment where a defendant discards items during a police chase, *e.g.*, *United States v. Tinoco,* 304 F.3d 1088, 1117 (11th Cir. 2002); *United States v. Edwards,* 441 F.2d 749, 751 (5th Cir. 1971)[3], or where a person decides to leave his property when law enforcement approaches or seeks to examine the property, *e.g.*, *United States v. McKennon,* 814 F.2d 1539, 1545-46 (11th Cir. 1987).

This is an objective test that focuses on the prior possessor's "intent, as discerned from statements, acts, and other facts." *Sparks*, 806 F.3d at 1342 (citation omitted). "All relevant circumstances existing at the time of the alleged abandonment should be considered," and "the critical inquiry . . . is whether the person prejudiced . . . voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question." *Id.* (internal quotation marks and citations omitted).

Here, it was proffered that Addison would testify that he and Defendant drove to the Wells Fargo in the Hyundai, and trial evidence bore this out. Prior to the Wells Fargo robbery that morning, Defendant received a call on this phone from a third person who appears to have been conducting countersurveillance. When the men later fled the Wells Fargo, Addison left the car keys in the bank and had to return inside. A panicked

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

Defendant and Addison can be seen on video scurrying around once they discovered the keys were left in the bank. Defendant left in a separate vehicle with the third person.

When Defendant fled, he voluntarily abandoned Addison, the Hyundai, and his phone during the panicked getaway from law enforcement. Plainly Defendant was aware his phone was inside the Hyundai as he had recently used it inside the car. As adduced at trial, Defendant also called Addison during the getaway with a different phone. The next day, Defendant further used his replacement phone to call the individual who had rented the Hyundai.

There is no indication, moreover, that since the seizure of the LG cellphone Defendant ever contacted the police department or anyone else to find his missing phone. Defendant was aware of the phone's location—he left it in the Hyundai and ran. Yet instead of contacting the police station, the very next day Defendant had a replacement phone. *Sparks*, 806 F.3d at 1343 (finding purchase of replacement phone indicative of abandonment); *see also United States v. Gregg*, No. 8:17-cr-409-T-33JSS, 2017 WL 7101172, at *6 (M.D. Fla. Dec. 14, 2017), *report and recommendation adopted*, 2018 WL 585550 (M.D. Fla. Jan. 29, 2018), *aff'd*, No. 18-12295, 2019 WL 2061918 (11th Cir. May 9, 2019) (same). The totality of the circumstances demonstrates that Defendant relinquished any interest in the phone on November 18, 2017.

II. <u>The Delay to Obtain and Execute the Search Warrant of the Phone</u>

Even assuming Defendant did not abandon his phone, the delay between the seizure and search of the cellphone was not unreasonable given the circumstances. Though the Eleventh Circuit noted in *United States v. Mitchell*, 565 F.3d 1347 (11th Cir. 2009) that three weeks could be too long, the court also recognized justifiable delay where "some overriding circumstances arose, necessitating the diversion of law enforcement personnel to another case," or "where the resources of law enforcement are simply overwhelmed by the nature of a particular investigation, so that a delay that might otherwise be unduly long would be regarded as reasonable." 565 F.3d at 1352-53. The same court, for example, upheld a twenty-five-day delay where the defendant's possessory interest in the seized property was diminished and the agents involved were "extremely busy." *United States v. Laist*, 702 F.3d 608, 616-17 (11th Cir. 2012).

The same considerations compel a finding of reasonableness here. The Court received evidence of the HSCO's busyness from November 2017 through January 2018. During this time frame, Lieutenant Power and Detective Breedlove's unit handled a number of officer-involved shootings and active homicides that took priority over armed robbery. Detective Breedlove himself testified he worked ten to twelve-hour days and served as lead detective in three active homicides and a sexual battery of a child with an out-of-state suspect. This was in addition to Detective Breedlove's regular duties of overseeing the HSCO's cataloging of sexual predators.

Additionally, the demands of the Wells Fargo case came at a time when the unit was short-staffed because of various vacations and trainings, including a training that Detective Breedlove attended in Jacksonville from December 4 to December 14, 2017. And despite Detective Breedlove's admitted neglect, the government had a strong interest in the contents of the phone which was found in a getaway car following an armed bank robbery. *See Laist*, 702 F.3d at 616-17 (finding relevant government's "legitimate interest in maintaining custody of [a] computer and hard drives as substantial evidence of a serious federal crime").

Moreover, at the outset of the search warrant process, the HSCO was diligent like the agents in *Laist*. Detective Breedlove "put the ball in motion" very early on in the investigation, obtaining a warrant for the car and Apple cellphone (taken from Addison's person) two days after the bank robbery and executing the warrant the next day. *Id.* at 611. He also drafted a warrant for the LG phone on November 27, 2017 and the following day obtained approval to proceed to the next steps from Lieutenant Power and his captain. Upon realizing his mistake, Detective Breedlove immediately drafted an updated warrant and obtained judicial approval. This is not *Mitchell* where "officers simply believed that there was no rush." 565 F.3d at 1353.

At the other end of the balancing scale, Defendant's possessory interest in the cellphone was significantly diminished. Though the phone was password-protected, Defendant did not contact HSCO to attempt to retrieve the phone, and Addison claimed

he did not own the phone. These facts distinguish this case from *Mitchell* and *Laist* where the police had seized property from a known owner. Indeed, from a practical standpoint, the police would not have known to whom to return the LG phone should they have decided not to search, or the search unearthed no evidence.

It is lastly worth noting that there are no concerns with the probable cause that supported the warrant becoming stale over time. Barring remote access to the phone, evidence relevant to the bank robbery that one could expect to find on the phone would continue to exist throughout the duration of police custody. Such evidence here included text messages, internet searches, and photographs. In sum, given the totality of the circumstances, the delay was not unreasonable.

III.    The Initial Search of the Phone

The government concedes that the January 3 extraction was conducted without a warrant. Acting in good faith, HSCO nonetheless subsequently and timely obtained a search warrant for the phone. Though ordinarily any evidence obtained as a result of the initial search would be fruit of the poisonous tree, the Court finds that the facts here satisfy the inevitable or independent source doctrine.

This case is very similar to *United States v. Borrero*, No. 13 Cr. 58 KBF, 2013 WL 5797126 (S.D.N.Y. Oct. 28, 2013), *aff'd,* 630 F. App'x 20 (2d Cir. 2015) where a cellphone was searched on mistaken consent. The day after federal authorities discovered the error, they obtained a search warrant that was not supported by any information

derived from the initial search. *Id.* at *6. The warrant, which repeated the facts of a prior warrant, also included information about the warrantless search. *Id.* The court went on to find that the independent source and inevitable discovery doctrines provided separate bases against suppression. *Id.* at *7-8.

Under the doctrine of inevitable discovery, notwithstanding an illegal search, "if the prosecution can establish by a preponderance of the evidence that the information would have ultimately been recovered by lawful means, the evidence will be admissible." *United States v. Virden*, 488 F.3d 1317, 1322 (11th Cir. 2007) (citing *Nix v. Williams,* 467 U.S. 431, 434 (1984)). The prosecution must also show that "the lawful means which made discovery inevitable were being *actively pursued* prior to the occurrence of the illegal conduct." *Id.*

As in *Borrero*, the evidence here would have been obtained inevitably because the phone was in police custody and involved in an ongoing state and federal investigation into a serious offense. As for active pursuit, Detective Breedlove had already prepared and drafted a warrant and obtained approval from Lieutenant Power and his captain. This is unlike *United States v. Satterfield*, 743 F.2d 827 (11th Cir. 1984), where the police had not taken any steps to procure the warrant prior to conducting the illegal search. 743 F.2d at 846.

Yet even if the doctrine of inevitable discovery is inapplicable, "evidence obtained from a lawful source that is independent of any Fourth Amendment violation is

11

admissible, the rationale being that the exclusionary rule should not put the government in a worse position than if the constitutional violation had not occurred." *United States v. Noriega*, 676 F.3d 1252, 1260 (11th Cir. 2012). As the Supreme Court explained:

> The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Murray v. United States*, 487 U.S. 533, 542 (1988). Thus, if the search warrant does not include any information obtained from the initial search to support probable cause, suppression is not required, provided that law enforcement's decision to seek the warrant was "not prompted by what they had seen during the initial entry." *United States v. Jones*, 433 F. App'x 825, 829 (11th Cir. 2011) (citations omitted).

Here, it is undisputed that the obtained search warrant did not include any information from the first search. The signing judge confirmed this fact with Detective Breedlove. Secondly, there is no indication that the decision to seek the warrant was prompted by what Detective Breedlove saw during the first search. Indeed, he had already drafted a warrant but had neglected to obtain judicial approval. It was Detective Toner's request for the search warrant, not anything that the HSCO discovered on January 3, 2018, that prompted Detective Breedlove to realize his mistake and to obtain a valid warrant.

In short, suppressing the evidence in this case would put the government in a worse position than it would have been in the absence of the violation. As the court observed in *Borrero*, "[i]t would be odd indeed if the mere happenstance of an erroneous [search] of a cellphone as to which there can be no doubt a warrant could have been obtained, and subsequently was obtained, could result in exclusion. That would privilege form over substance, which is not the purpose or intent of either the Fourth Amendment or the interpreting case law." 2013 WL 5797126, at *7-8. Suppression is unwarranted.

IV. Probable Cause

Defendant lastly challenges the probable cause supporting the search warrant for the LG phone. "Probable cause exists when there is 'a fair probability that contraband or evidence of a crime will be found.'" *Virden*, 488 F.3d at 1322 (citation omitted).

Here, the phone was found in a car that was involved in an armed bank robbery and police chase. The driver and sole occupant during the chase carried a separate phone on his person and disclaimed ownership of the LG phone. The armed robbery was carried out by two robbers inside the bank. It would be reasonable to extrapolate that the second phone belonged to Addison's co-offender, as he stated, "Dirty Red." Thus, there was a fair probability that evidence relating to the robbery would be found on the phone, for example, communications between Addison and the phone's owner or to the car rental agency, directions to the bank, or photographs or other information of the bank such as opening hours.

This was essentially the content of the search warrant application presented to the state judge. Among other things, Detective Breedlove stated in the affidavit for a search warrant that "individuals send and receive information via cellular phones while committing criminal offenses. Additionally, cellular phones with GPS capabilities track locations within said cellular phones. . . . [The LG] cellular phone would contain information as related to this case; [i.e.] location, movement, contact via phone, text or instant messaging." Dkt. 205-4 at 8. In sum, the signing judge was correct in finding probable cause to support the search warrant.

## CONCLUSION

In accord with the Court's oral ruling on May 20, 2019, Defendant Turner's Motion to Suppress Evidence is denied. Dkt. 165.

**DONE AND ORDERED** at Tampa, Florida, on May 29, 2019.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
All counsel of record